UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VIRGINIA F. SMITH,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>Defendant. | No. 2:14-CV-00083-RHW<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 12, 15. Attorney Dana C. Madsen represents Virginia F. Smith (Plaintiff); Special Assistant United States Attorney Franco L. Becia represents the Commissioner of Social Security (Defendant). After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income (SSI) on September 1, 2010, alleging disability since February 1, 2008. Tr. 173-78. The applications were denied initially and upon reconsideration. Tr. 1123-26, 128-29.

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 1

Administrative Law Judge (ALJ) Moira Ausems held a hearing on April 24, 2012 at which Plaintiff, represented by counsel, testified as did vocational expert (VE) Sharon Welter. The ALJ issued an unfavorable decision on June 21, 2012. Tr. 22-43. The Appeals Council denied review. Tr. 1-7. The ALJ's June 2012 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on February 2, 2014. ECF Nos. 1, 3.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 48 years old at the time of the hearing. Tr. 92. Plaintiff stopped going to school in tenth grade, but later obtained a GED. Tr. 80. Plaintiff has worked as a cook and at a bakery. Tr. 79. Plaintiff last worked as a janitor from March 2007 to January 2008. Tr. 55. Plaintiff stopped working because she experienced symptoms that required her to undergo a hysterectomy. Tr. 55-56. Plaintiff did not return to work because her back started hurting. Tr. 56.

Plaintiff testified that her back pain has gotten so bad that she "can hardly do anything." Tr. 77. Plaintiff testified that she has headaches three to four times a week; she estimated that she has migraine headaches twice a week. Tr. 63. Plaintiff has depression and finds it hard to be around people. Tr. 66. Plaintiff takes Prozac for her depression, which helps a little. Tr. 73. Plaintiff testified that she has chest pain, which is worse in hot weather. Tr. 67-68. Plaintiff testified that her legs move when she's trying to sleep. Tr. 70. Plaintiff testified that she has acid reflux and pain in her right shoulder. Tr. 71.

Plaintiff testified that she can only sit for ten to fifteen minutes at a time, before she has to stand. Tr. 59. Plaintiff testified that she can stand for about fifteen minutes and walk about "a half-a-block to a block" before she needs to rest.

Tr. 60. Plaintiff did not think she could lift over ten pounds. Tr. 60. Plaintiff's neck pain limits her ability to turn her head and she has trouble bending over. Tr. 68. Plaintiff testified that she cannot lift her right arm above shoulder height. Tr. 71.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of

proof rests upon claimants to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once claimants establish that physical or mental impairments prevent them from engaging in their previous occupations. 20 C.F.R. § 416.920(a)(4). If claimants cannot do their past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimants can make an adjustment to other work, and (2) specific jobs exist in the national economy which claimants can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If claimants cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(i-v).

## ADMINISTRATIVE DECISION

On June 21, 2012, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 24, 2009, the date of Plaintiff's prior application. Tr. 27.

At step two, the ALJ determined Plaintiff had the following severe impairments: chronic obstructive pulmonary disease; obesity; cervical, thoracic, and lumbar degenerative disc disease/degenerative joint disease; migraine headaches; major depressive disorder; avoidant personality disorder; and, cannabis dependence. Tr. 27.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 31.

At step four, the ALJ assessed Plaintiff's residual function capacity (RFC) and determined she could perform light work that did not require

> more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, and crawling. She should avoid climbing ladders, ropes or scaffolds. She should avoid concentrated exposure

to extreme cold, fumes, odors, dusts, gases, poor ventilation, etc. She should avoid concentrated exposure to hazards such as machinery or heights. She is capable of carrying out simple, repetitive tasks with no more than occasional contact with the general public and no work performed in a setting involving dealing with large crowds.

Tr. 33. The ALJ concluded that Plaintiff was able to perform her past relevant work as a cleaner/housekeeper and sales clerk, food. Tr. 36.

At step five, the ALJ determined that even if Plaintiff is limited to sedentary work, there were other jobs that Plaintiff could perform, including the jobs of sewing machine operator or production assembler. Tr. 36. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from July 24, 2009, through the date of the ALJ's decision. Tr. 37.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly credit Plaintiff's testimony about the severity of her symptoms; (2) failing to properly consider and weigh the psychological opinion evidence; and, (3) failing to properly evaluate the evidence of Plaintiff's physical impairments.

## DISCUSSION

**A.  Credibility**

Plaintiff contests the ALJ's adverse credibility determination. ECF No. 12 at 12-13.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's

testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

The ALJ found Plaintiff not fully credible concerning the intensity, persistence, and limiting effects of her symptoms. Tr. 34. The ALJ reasoned that Plaintiff was less than credible because (1) her symptom reporting was not supported by the objective medical evidence and treatment notes, (2) she received only conservative treatment, (3) she did not seek mental health counseling, (4) she made a variety of inconsistent statements, and (5) her reporting was contrary to her activities of daily living.

### 1. Contrary to the objective medical evidence and treatment notes

The ALJ noted that Plaintiff's complaints of daily migraines were not supported by treatment notes. Tr. 34. The ALJ noted that Plaintiff's back pain was not supported by physical examinations and x-rays showed only minimal or mild findings. Tr. 34 (citing Tr. 615-20 (A. Peter Weir, M.D. opining that Plaintiff has "no functional limitations," and x-rays revealing "[m]ild leftward curvature of thoracolumbar spine . . . [and] [m]ild multilevel disc degeneration")).

Although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Substantial evidence supports the ALJ's finding that objective evidence of Plaintiff's back pain and migraine headaches does not support the level of severity alleged by Plaintiff. *See* Tr. 34, 615-20. Plaintiff argues that "there are references throughout the record concerning [Plaintiff's] headaches." ECF No. 12 at 13 (citing Tr. 529-30, 581-82, 628-30). But as noted by Defendant, some of these references were made prior to the relevant period (Tr. 529-30), and the other

references (Tr. 581-82, 628-30) do not contradict the ALJ's finding that Plaintiff did not regularly report migraine symptoms. ECF No. 15 at 9. Plaintiff further argues that the ALJ may not rely solely on objective evidence to discredit Plaintiff. ECF No. 12 at 13. As discussed *infra*, the ALJ provided additional valid reasons to discredit Plaintiff; therefore, this argument fails. The fact that objective medical evidence does not support Plaintiff's allegations of disabling back pain and migraine headaches is a specific, clear, and convincing reason to discredit Plaintiff.

### 2. Conservative treatment

The ALJ noted that Plaintiff took over-the-counter medication for her migraines. Tr. 34.

Conservative treatment can be "sufficient to discount a claimant's testimony regarding [the] severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

At the hearing, Plaintiff testified that she takes "Excedrin Migraine" and will put a cold rag over her eyes. Tr. 63-64. The ALJ reasonably inferred that if Plaintiff's migraines were not severe enough for her to seek prescription medication or other treatment, then the migraines were not as frequent or disabling as she alleged. This is a specific, clear, and convincing reason to discredit Plaintiff.

### 3. Failure to seek treatment

The ALJ noted that Plaintiff had not sought counseling and had refused counseling when it was offered to her. Tr. 34 (citing Tr. 573 (Plaintiff reporting she was "not interested in counseling")).

Unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. 20 C.F.R. § 416.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989);

Substantial evidence supports the ALJ's finding that Plaintiff's failure to seek mental health counseling detracts from her credibility. Numerous medical

providers recommended that Plaintiff should participate in therapy. *See*, *e.g.*, Tr. 446, 573, 652, 661. At the hearing, Plaintiff acknowledged that counseling would "probably . . . help," but she didn't know where to seek counseling. Tr. 72. As argued by Plaintiff, it is "a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation," *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). In this case, however, Plaintiff's failure to follow the recommendations of her medical providers, and her awareness that counseling could help her, supports that Plaintiff's resistance to treatment was more a personal choice, rather than attributable to her mental impairment. *See Molina*, 674 F.3d at 114. Plaintiff's failure to seek mental health counseling is a specific, clear, and convincing reason to discredit her.

### 4. Inconsistent statements

The ALJ noted a number of inconsistencies that detracted from Plaintiff's credibility. The ALJ noted (1) Plaintiff inconsistently reported her number of suicide attempts, Tr. 563-79, 683; (2) Plaintiff claimed to need a cane, but a physical examination revealed that, even without a cane, she could walk without difficulty, Tr. 618; (3) Plaintiff inconsistently reported when her back pain started, Tr. 478, 615; (4) tests results suggested that Plaintiff was exaggerating or over-reporting her symptoms, Tr. 445, 643, 653, 687-88; (5) Plaintiff inconsistently reported childhood abuse, Tr. 595, 656; (6) in February 2012, Plaintiff reported to Dr. Rosekrans that she had not worked for ten years, when it appears she worked in 2008 and 2009, Tr. 682.

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid." *Smolen*, 80 F.3d at 1284.

The inconsistencies identified by the ALJ provide a substantial basis to conclude that Plaintiff is less than credible. Plaintiff argues that these

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 8

inconsistencies are insignificant and some can be explained by the passage of time and Plaintiff's traumatic history. ECF No. 12 at 14. The Court disagrees with Plaintiff that some of the inconsistencies identified by the ALJ are minor. To the contrary, the Court finds the inconsistencies identified by the ALJ relate to Plaintiff's mental health, the cause and severity of her impairments, and Plaintiff's veracity. Plaintiff further argues that her invalid test score "does not reflect on her credibility as much as it affects the usefulness of the report." ECF No. 12 at 14. The Court further disagrees. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (a claimant's failure to give maximum or consistent effort during examinations is a reason to discredit the claimant). Plaintiff's inconsistent reporting is a specific, clear, and convincing reason to discredit Plaintiff.

**5. Activities**

The ALJ noted Plaintiff's testimony that she rarely leaves her room and has trouble doing daily activities inconsistent with reports that she is independent with self-care, can perform simple household tasks including laundry and cooking simple meals, go to the store, ride the bus, visit with her son and one friend, write a book, read, use a computer, take care of children residing in her home, and manage her own money. Tr. 34 (citing Tr. 444-45, 595-99, 617, 682).

A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict his or her other testimony, or (2) "the claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair*, 885 F.2d at 603). "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005)). A claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603.

The Court finds the ALJ may have erred in using Plaintiff's daily activities to discredit her, but any error is harmless. The ALJ did not cite to Plaintiff's testimony that she rarely leaves her room or has trouble with household chores. There are some references that Plaintiff prefers to isolate in her room rather than socialize, *see* Tr. 203, but Plaintiff also reported that she is capable of doing some chores, going to the store, and attending to her personal care, although such activities are difficult for her. *See* Tr. 72-74, 200-04, 265-69. As substantial evidence does not support the inconsistency identified by the ALJ, the ALJ should not have used Plaintiff's activities to discredit her. Any error is harmless, however, given the number of other valid reasons provided by the ALJ to discredit Plaintiff. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination."); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1160, 1163 (9th Cir. 2008) (upholding adverse credibility finding where ALJ provided four reasons to discredit claimant, two of which were invalid).

### 6. Conclusion

The ALJ gave several specific, clear, and convincing reasons for finding Plaintiff less than credible and these reasons are supported by substantial evidence. Any error made by the ALJ in using Plaintiff's activities to discredit her is harmless given the number of other valid reasons provided by the ALJ.

### B.   Evaluation of Medical Evidence

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinion expressed by Drs. Mabee, Arnold, Rosekrans, Quackenbush, and Ugorji. ECF No. 12 at 15-20.

"In making a determination of disability, the ALJ must develop the record and interpret the medical evidence." *Howard ex. rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830. The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn*, 495 F.3d at 631. The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

To the extent that Drs. Mabee, Arnold, Rosekrans, Quackenbush, and Ugorji assessed Plaintiff with limitations that would prevent her from working, these opinions are contradicted by the opinions of State agency consultant physicians Edward Beaty, Ph.D., Norman Staley, M.D., Rita Flanagan, Ph.D., and Guthrie Turner, M.D. Tr. 94-105, 107-118. Therefore, the ALJ was required to provide specific and legitimate reasons for rejecting the opinions of Drs. Mabee, Arnold, Rosekrans, Quackenbush, and Ugorji.

**1. W. Scott Mabee, Ph.D.**

Dr. Mabee completed psychological/psychiatric evaluations of Plaintiff in March 2008, February 2009, and April 2010. Tr. 330-42, 439-47, 638-46, 658-65.

In the February 2009 evaluation, Dr. Mabee diagnosed Plaintiff with major depressive disorder recurrent moderate. Tr. 440, 446. Dr. Mabee assessed Plaintiff with no more than mild cognitive limitations, but found Plaintiff markedly and moderately limited in her social functioning. Tr. 441. Dr. Mabee concluded

> [Plaintiff's] depression and perceived physical ailments will likely interfere with her ability to tolerate the stress and pressures of a work environment. It is important that she improve her coping skills so that she can tolerate stressful work situations. In addition, her depression is likely to negatively impact social interactions in a work environment until her symptoms are better stabilized.
>
> [Plaintiff's] low average judgment abilities and a slow pace of performance is likely due to the severity of her psychological distress. Her ability to persist in a regular work environment is moderately limited until she receives appropriate mental health interventions.

Tr. 446.

In the April 2010 evaluation, Dr. Mabee diagnosed Plaintiff with Major Depressive D/O-Recurrent-Moderate with Interepisode Recovery and Avoidant Personality D/O. Tr. 640. Dr. Mabee found Plaintiff markedly limited in her ability to relate appropriately to co-workers and supervisors, but found Plaintiff only mildly or moderately limited in other areas of cognitive and social functioning. Tr. 641. Dr. Mabee concluded that Plaintiff

> will be limited to working in an environment not requiring social interaction with others. Her reported physical symptoms . . . may also create limitations in terms of the type of work she can do. She would be most successful working by herself doing familiar tasks requiring limited interaction with supervisors, other employees or the public."

Tr. 641. Dr. Mabee recommended Plaintiff engage in individual therapy twice a month and be evaluated for psychotropic medications. Tr. 642.

The ALJ gave little weight to Dr. Mabee's February 2009 and 2010 evaluations. The ALJ reasoned that Dr. Mabee "placed undue reliance upon the subjective allegations of an individual in a setting where she was being evaluated for the specific purpose of determining entitlement to state general assistance benefits." Tr. 35. The ALJ further reasoned that Dr. Mabee did not account for

Plaintiff's invalid test profile and her marijuana use. Tr. 35. The ALJ gave weight to Dr. Mabee's 2010 opinion that Plaintiff would be most successful doing familiar tasks requiring limited interactions with others. Tr. 35 (citing Tr. 641). The ALJ found this opinion consistent with Dr. Arnold's opinion that Plaintiff was capable of understanding and carrying out simple and somewhat detailed instructions and would work best with minimal interaction with others. Tr. 35-36 (citing Tr. 651). The ALJ found these opinions consistent with the opinions of other reviewing and examining sources. Tr. 36 (citing Tr. 94-105, 107-118, 595-99).

Plaintiff argues that the ALJ erred by rejecting Dr. Mabee's March 2008 and February 2009 opinions. ECF No. 12 at 16-17. As argued by Defendant, these opinions were rendered prior to the relevant period of this case, and, presumably, were considered with Plaintiff's previous application. ECF No. 15 at 19 n.4. *See also Carmickle*, 533 F.3d at 1165 ("Medical opinions that predate the alleged onset of disability are of limited relevant."). But the ALJ did discuss Dr. Mabee's 2009 evaluation; therefore, the Court will limit its analysis to whether the ALJ erred in evaluating Dr. Mabee's 2009 and 2010 evaluations.

Plaintiff argues that the ALJ erred by rejecting Dr. Mabee's opinions on account of the fact that Plaintiff sought the evaluation as part of her application for state benefits. ECF No. 12 at 16 (citing Tr. 35). The Court agrees with Plaintiff that this is typically not a valid reason to reject a medical source opinion. *See Lester*, 81 F.3d at 832 ("[T]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them.").

Plaintiff further argues that the ALJ improperly found that Dr. Mabee's evaluations "placed overreliance on Plaintiff's subjective complaints." ECF No. 12 at 16. The Court again agrees that the ALJ erred by not providing any specific reasoning regarding how Dr. Mabee placed undue reliance on Plaintiff's subjective reporting. The ALJ seemed to tie this reasoning to her reasoning regarding how Plaintiff sought the evaluation for purposes of obtaining state benefits. *See* Tr. 35

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 13

(ALJ reasoning that Dr. Mabee "placed undue reliance upon the subjective allegations of [Plaintiff] in a setting where she was being evaluated for the specific purpose of determining entitlement to state general assistance benefits.").

Plaintiff further argues that although "there was some indication of over reporting symptoms, Dr. Mabee surely did not base his opinions on invalid sources." ECF No. 12 at 17.  The Court again agrees with Plaintiff that the ALJ erred in finding that Dr. Mabee's conclusions are "absent consideration of the invalid test results."  Tr. 35 (citing Tr. 445, 643).  In the 2009 evaluation, Plaintiff had an invalid MMPI-2-RF[1] test score, Tr. 445, but other valid test scores and Dr. Mabee's mental status exam provided alternate bases for Dr. Mabee's opinions. In Dr. Mabee's 2010 evaluation, he concluded that Plaintiff's test scores were "valid and interpretable," although Plaintiff's "level of depressive symptoms is even unusual in clinical samples." Tr. 643.  Contrary to the ALJ's reasoning, Dr. Mabee did appear to account for Plaintiff's questionable test scores and did not rely solely on these scores in assessing Plaintiff's limitations.

Finally, Plaintiff does not contest the ALJ's citation to Plaintiff's marijuana use as a reason to reject Dr. Mabee's opinions.  But the Court finds that Plaintiff's limited marijuana use is not a legitimate reason to reject Dr. Mabee's opinions. The record does not support that Plaintiff used marijuana on a regular basis.  And the ALJ's suggestion that Plaintiff was under the influence of marijuana at Dr. Mabee's 2010 evaluation because she "appeared sleepy and lethargic," Tr. 35, is tenuous and unsupported.

In conclusion, the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Mabee's opinions, especially Dr. Mabee's assessment of marked social limitations.  On remand, the ALJ shall credit Dr. Mabee's evaluations or provide other reasons for rejecting them.

//

---

[1] Minnesota Multiphasic Personality Inventory-2 Restructured Form.

### 2. John Arnold, Ph.D.

Dr. Arnold completed a psychological evaluation of Plaintiff in October 2010. Tr. 648-56. Dr. Arnold diagnosed Plaintiff with major depressive disorder, recurrent moderate; pain disorder associated with both psychological factors and a general medical condition; and, avoidant personality disorder. Tr. 650. Dr. Arnold found Plaintiff markedly limited in her ability to relate appropriately to co-workers and supervisors. Tr. 651. Dr. Arnold concluded

> [Plaintiff] will be limited to working in an environment not requiring social interaction with others . . . She would be most successful working by herself doing familiar tasks requiring limited interaction with supervisors, other employees or the public. Cognitively, she should be able to understand and follow simple to moderately complex tasks; however, poor motivation would likely interfere.

Tr. 651.

Dr. Arnold completed a second psychological evaluation of Plaintiff in September 2011. Tr. 658-666. Dr. Arnold diagnosed Plaintiff with major depressive disorder, recurrent moderate; pain disorder associated with both psychological factors and a general medical condition; and, avoidant personality disorder. Tr. 659. Dr. Arnold found Plaintiff markedly limited in her ability to communicate and perform effectively in a work setting with public contact and her ability to maintain appropriate behavior in a work setting. Tr. 660. Dr. Arnold concluded

> [Plaintiff] is capable of understanding and carrying out simple and somewhat detailed instructions. She can concentrate for short periods of time. She can complete simple tasks without close supervision and not disrupt others. She would work best in positions that have minimal interaction with others. She can use the bus for transportation. She can recognize hazards and take appropriate precautions.

Tr. 661.

The ALJ rejected Dr. Arnold's opinions based substantially on the same reasoning as the ALJ gave in rejecting Dr. Mabee's opinions. Tr. 35. *Supra*, the Court identified a number of errors made by the ALJ in rejecting Dr. Mabee's opinions. These errors equally apply to the ALJ's evaluation of Dr. Arnold's opinions. In particular, the ALJ did not provide reasoning to reject the marked social limitations assessed by Dr. Arnold. On remand, the ALJ shall credit Dr. Arnold's opinions or give other legitimate reasons for rejecting them.

**3. Frank Rosekrans, Ph.D.**

Dr. Rosekrans completed a psychological evaluation of Plaintiff in February 2012. Tr. 681-90. Dr. Rosekrans diagnosed Plaintiff with major depressive disorder, somatization disorder, and personality disorder NOS. Tr. 681, 690. Dr. Rosekrans concluded that Plaintiff had the residual capacity to "do very little physically. She can sit at a table and play computer games." Tr. 682. Dr. Rosekrans went on to chronicle some of Plaintiff's reports. Tr. 687-90. Dr. Rosekrans organized Plaintiff's reporting into the categories of "Clinical Features," "Self-Concept," and "Interpersonal and Social Environment," but did not assess Plaintiff with any clear limitations. Tr. 687-90.

The ALJ gave "absolutely no weight" to Dr. Rosekrans opinions, noting that they were "rather nonsensical." Tr. 35.

Plaintiff argues that the ALJ provided "no explanation to illuminate this bold statement." ECF No. 12 at 17. The Court is inclined to agree with the ALJ's criticism of Dr. Rosekrans' opinions. Dr. Rosekrans' evaluation is difficult to follow, seems disorganized, and fails to assess Plaintiff with any clear limitations. Nevertheless, the Court agrees with Plaintiff that the ALJ's reasoning, i.e., that Dr. Rosekrans opinion is "rather nonsensical," Tr. 35, is not a specific and legitimate

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . ~ 16

reason to reject it.  On remand, the ALJ shall credit Dr. Rosekrans' opinions or give specific and legitimate reasons for rejecting them.

### 4. Robert L. Quackenbush, Ph.D.

Dr. Quackenbush completed a psychological evaluation of Plaintiff in January 2011.  Tr. 595-99.  Dr. Quackenbush diagnosed Plaintiff with Depressive Disorder NOS.  Tr. 598.  Dr. Quackenbush concluded

> The prognosis for [Plaintiff] is guarded to fair.  [Plaintiff] appears depressed at this time, and this clearly impedes her capacity to entertain potential employment prospects.  In addition, social anxieties would preclude many work roles, but would not be a factor in the solitary role of building maintenance.  However, [Plaintiff's] physical capacities may preclude such employment (deferred to medical providers).
>
> Note that mild to moderated pain behaviors were observed, albeit no medical records were reviewed.  Cognitively, [Plaintiff] can understand and retain simple to detailed information, and she appears capable of making simple judgments and work decisions.  Socially, [Plaintiff] was generally friendly, although distant, and she communicated effectively with the examiner throughout the course of the present exam.

Tr. 598-99.

The ALJ gave some weight to Dr. Quackenbush's opinions, at least to Dr. Quackenbush's opinion that Plaintiff was able to understand and retain simple to detailed information and appeared capable of making simple judgments and work decisions.  Tr. 36.

Plaintiff argues that the ALJ gave no reason for rejecting Dr. Quackenbush's opinions that Plaintiff's prognosis was "fair to guarded" and that her depression clearly impedes her capacity to entertain employment prospects and her social anxieties would preclude many roles.  ECF No. 12 at 18.  The Court agrees that the ALJ did not adequately account for Dr. Quackenbush's opinion that Plaintiff's

"social anxieties would preclude many work roles, but would not be a factor in the solitary role of building maintenance." Tr. 598. This opinion seems consistent with the marked social limitations assessed by Drs. Mabee and Arnold. *See* Tr. 441, 641, 651, 660-61. On remand, the ALJ shall credit Dr. Quackenbush's opinions or give specific and legitimate reasons for rejecting them.

### 5. Kingsley Ugorji, M.D.

Dr. Ugorji was Plaintiff's primary care provider at Community Health Association of Spokane since approximately August 2009. *See* Tr. 478-81, 586-94, 622-36, 672-79. Dr. Ugorji completed a physical evaluation of Plaintiff in April 2010. Tr. 667-70. Dr. Ugorji diagnosed Plaintiff with moderate to severe back pain, gastroesophageal reflux disease, mild to moderate dysphagia, mild to moderate depression, restless leg syndrome, and insomnia. Tr. 669. Dr. Ugorji opined that Plaintiff was limited to sedentary work. Tr. 669. Dr. Ugorji concluded that Plaintiff had "chronic low back pain with multi-level arthritis and she is very unlikely to fully recover from the back pain." Tr. 670.

The ALJ gave no weight to Dr. Ugorji's opinion that Plaintiff was limited to sedentary work and was "very unlikely to fully recover from her back pain." Tr. 35 (citing Tr. 670). The ALJ reasoned this opinion was not supported by objective medical evidence and based primarily on Plaintiff's statements. Tr. 35 (citing Tr. 672-79).

Plaintiff argues that Dr. Ugorji's opinions are entitled to controlling weight as Dr. Ugorji was Plaintiff's treating physician. ECF No. 12 at 20. Plaintiff argues that the ALJ does not explain how Dr. Ugorji's opinions are based on Plaintiff's subjective complaints and argues that there is objective evidence in Plaintiff's CHAS file to justify Dr. Ugorji's opinions. ECF No. 12 at 20.

The Court is inclined to find any error made by the ALJ in rejecting Dr. Ugorji's opinion harmless. Even if the ALJ had fully credited Dr. Ugorji's opinion that Plaintiff was limited to sedentary work, the ALJ's alternative step five finding

takes into account such a limitation. Tr. 36. That is, even if Plaintiff was limited to sedentary work, and taking into account the other limitations contained in the ALJ's RFC determination, the ALJ made adequate findings to conclude that Plaintiff would be capable of working as a sewing machine operator or as a production assembler. Tr. 36. But due to other errors made by the ALJ in evaluating the medical evidence discussed *supra*, on remand, the ALJ may need to reevaluate Dr. Ugorji's opinions.

## REMEDY

The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that further proceedings are necessary for a proper determination to be made.

On remand, the ALJ shall reconsider the limitations assessed by Drs. Mabee, Arnold, Rosekrans, Quackenbush, and Ugorji, especially Plaintiff's social limitations. The ALJ need not reevaluate Plaintiff's credibility as the Court finds the ALJ's adverse credibility finding supported by substantial evidence and free of harmful legal error. At the new administrative hearing, the ALJ, if warranted, shall elicit the testimony of a medical expert to assist the ALJ in determining Plaintiff's residual functional capacity (RFC). The ALJ shall present the RFC assessment to a VE to help determine if Plaintiff is capable of performing any other work existing in sufficient numbers in the national economy.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is not supported by substantial evidence and contains legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

**DATED** this 7th day of October, 2015.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge